WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn: Peter A. Meisels (PM-5018)
      Lalit K. Loomba (LL-9755)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x  07 Civ. 1296 (CLB)
ARAZ ALALI,

                    Plaintiff,

     -against-                             **STATEMENT OF
                                             UNDISPUTED FACTS
ROBERT GAZZOLA, individually, PATRICK J.  PURSUANT TO LOCAL RULE
CARROLL, individually, and the CITY OF NEW  56.1**
ROCHELLE, New York,

                    Defendants.
------------------------------------------------------------x

     Pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, defendants Robert Gazzola, Patrick J. Carroll, and the City of New Rochelle (collectively, the "Defendants") hereby submit the following statement of material facts as to which they contend there are no genuine issues to be tried. This Rule 56.1 Statement is submitted in support of the Defendants' motion for summary judgment on grounds of absolute and qualified immunity.

     This motion is brought pursuant to the procedures set forth in paragraph 3(d) of the Civil Case Discovery Plan and Scheduling Order, entered on May 25, 2007.

1625489.1

## The Parties

1. Plaintiff Araz Alali ("Alali") is, and at all relevant times has been, a Police Officer with the New Rochelle Police Department ("NRPD" or the "Department").

2. Defendant Robert Gazzola ("Gazzola") is, and at all relevant times has served as, a Captain with the NRPD.

3. Defendant Patrick J. Carroll ("Carroll") is, and at all relevant times has served as, the Commissioner of Police for the City of New Rochelle.

4. Defendant the City of New Rochelle ("City") is a municipal corporation existing under the laws of the state of New York.

## Civilian Complaints Against Alali

5. Alali joined the NRPD effective February 10, 2002. Exhibit A[1]; *See* Deposition of plaintiff Araz Alali ("Alali Dep."), at 230:9-16. Relevant pages of the Alali Deposition taken June 25 and continued July 10, 2007 are annexed as Exhibit B.

6. On or about June 12, 2002, a civilian complaint (#33/02) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. *See* Affidavit of Det. Lt. James Fortunato, sworn to July 30, 2007 ("Fortunato Aff't"), at ¶5.

7. On or about August 12, 2002, a civilian complaint (#67/02) was brought against Alali in connection with a motor vehicle accident, alleging that Alali was rude and yelled at the complainant. Fortunato Aff't, at ¶6.

8. On or about August 12, 2002, a civilian complaint (#69/02) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶7.

---

[1] All exhibits are annexed to the accompanying declaration of Lalit K. Loomba, Esq., dated August 1, 2007.

9. On or about October 22, 2002, a civilian complaint (#96/02) was brought against Alali in connection with a traffic stop on July 28, 2002, alleging that Alali was rude and discourteous, and that he refused to give the complainant directions even though the complainant stated she was lost. Fortunato Aff't, at ¶8.

10. On or about February 25, 2003, a civilian complaint (#5/03) was brought against Alali in connection with a parking ticket, alleging that Alali had no "ethical" basis to issue the ticket because Alali often parked his personal car in the same spot. Fortunato Aff't, at ¶9.

11. On or about February 26, 2003, a civilian complaint (#4/03) was brought against Alali in connection with a traffic stop, alleging that Alali had racially profiled the complainant and issued a summons without a valid reason. Fortunato Aff't, at ¶10.

12. Alali suffered an injury on or about July 28, 2003. He did not return to active duty until October 1, 2004. Fortuanto Aff't, at ¶11; Affidavit of Robert Gazzola, sworn to July 27, 2007 ("Gazzola Aff't"), at ¶4.

13. On or about October 22, 2004, a civilian complaint (#80/04) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous, and issued multiple unnecessary summonses, possibly motivated by racial prejudice. Fortunato Aff't, at ¶12.

14. On or about December 5, 2004, a civilian complaint (#91/04) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶13.

15. On or about January 19, 2005, a civilian complaint (#6/05) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶14.

16. On or about January 28, 2005, a civilian complaint (#12/05) was brought against Alali in connection with a traffic stop, alleging that Alali issued unnecessary summonses in order to harass the complainant. Fortunato Aff't, at ¶15.

17. On or about April 14, 2005, a civilian complaint (#28/05) was brought against Alali in connection with a traffic stop, alleging that Alali had no valid basis to issue the summons. Fortunato Aff't, at ¶16.

18. On or about August 4, 2005, a civilian complaint (#58/05) was brought against Alali in connection with a traffic stop, alleging that Alali looked at the complainant, a female, in an inappropriately suggestive way. Fortunato Aff't, at ¶17.

19. On or about December 27, 2005, a civilian complaint (#95/05) was brought against Alali, alleging that Alali was driving his police car in a reckless and unsafe manner, after which Alali followed the complainant and argued with him. Fortunato Aff't, at ¶18.

20. On or about January 12, 2006, a civilian complaint (#4/06) was brought against Alali, alleging that Alali used excessive force in an incident involving students at the New Rochelle Public High School. Fortunato Aff't, at ¶19.

21. On or about March 3, 2006, a civilian complaint (#14/06) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶20.

22. On or about March 19, 2006, a civilian complaint (#21/06) was brought against Alali, alleging that Alali yelled at the complainant (for parking on the wrong side of the road) and then sped away in his police car in a reckless and unsafe manner. Fortunato Aff't, at ¶21.

23.	On or about May 6, 2006, a civilian complaint (#31/06) was brought against Alali in connection with a traffic stop, alleging that Alali issued numerous and unnecessary summonses. Fortunato Aff't, at ¶22.

24.	On or about July 21, 2006, a civilian complaint (#51/06) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶23.

25.	On or about August 11, 2006, a civilian complaint (#59/06) was brought against Alali in connection with a traffic stop, alleging that Alali was rude and discourteous. Fortunato Aff't, at ¶24.

26.	On or about September 6, 2006, a civilian complaint (#64/06) was brought against Alali by the same complainant who filed the August 11, 2006 complaint, alleging that Alali improperly placed him under arrest because of prior incidents. Fortunato Aff't, at ¶25.

27.	On or about February 27, 2007, a civilian complaint (#6/07) was brought against Alali in connection with a traffic stop, alleging that Alali issued a summons only because of a dispute between Alali and the complainant about work the complainant had performed on an apartment owned by Alali. Fortunato Aff't, at ¶26.

28.	As a result of the foregoing civilian complaints, the Department has, at various times during Alali's employment, taken various remedial measures including, sending Alali for retraining, counseling Alali to use courtesy and discretion in dealing with the public, and assigning Alali for Verbal Judo training. Fortunato Aff't, at ¶27.

29.	Verbal Judo is a tactical communications technique in which police officers are trained to use "presence and words" to calm difficult people who may be under severe emotional or other influences, redirect the behavior of hostile people, diffuse potentially dangerous

situations, perform professionally under all conditions and achieve the desired outcome of an encounter. Fortunato Aff't, at ¶28.

### Command Discipline Against Alali

30. On or about September 20, 2002, Alali accepted command discipline (letter of reprimand) for an incident occurring on August 1, 2002, in which Alali was involved in a motor vehicle accident while driving his police car the wrong way on a one-way street, thereby violating Section 8.2 of the NRPD Rules and Regulations ("R&R"). Exhibit C.

31. Section 8.2 of the NRPD Rules and Regulations provides:

> Members of the Department will operate department vehicles in a careful and prudent manner in accordance with all Vehicle and Traffic laws and department procedures. Members of the Department will, at all times, give the highest priority to the safety and welfare of the general public when operating a department vehicle and will operate all vehicles in such a manner as to avoid injuries to persons or damage to property.

Exhibit D.

32. On or about December 26, 2002, Alali accepted command discipline (letter of reprimand) for an incident occurring on October 29, 2002, in which Alali was charged with leaving his assigned post without a justified cause, thereby violating R&R Section 1.5. Exhibit E.

33. Section 1.5 of the NRPD Rules & Regulations provides, in relevant part: "Members of the Department assigned to motorized patrol, foot patrol, or a fixed post will not leave their designated area of patrol for any reason other than police necessity, personal necessity or meal period." Exhibit F.

34. On or about January 13, 2003, Alali accepted command discipline (loss of one (1) leave day) for an incident occurring on December 23, 2002, in which Alali failed to respond

when a superior officer repeatedly tried to contact Alali over the police radio, thereby violating R&R Section 1.9. In this same incident, Alali was found to have turned out for duty without bringing his uniform hat after he had been reminded by a supervisor to do so at the start of the tour. Exhibit G.

35. Section 1.9 of the NRPD Rules & Regulations provides: "Members of the Department are responsible for properly and promptly answering the radio." Exhibit H.

36. On or about March 10, 2005, Alali accepted command discipline (letter of reprimand) for an incident occurring on January 19, 2005, in which Alali violated Section 3.5 of Article 2.03 of the NRPD Manual of Procedure by being discourteous and unprofessional to a motorist during a traffic stop. Exhibit I.

37. Article 2.03, Section 3.5 of the NRPD Manual of Procedure provides:

> An officer will be courteous and professional in his conversation with the violator. He will not scold or lecture the violator. Verbal Judo will be employed by the officer. The objective of traffic enforcement is to improve the driving performance of the motoring public. The focus of the stop should be the offense committed by the violator. Conduct on the officer's part that is less than professional suggests that the offense committed was not against the Vehicle and Traffic Law but was a personal affront to the officer and, as such, may lead the violator to feel that he is a victim and not an offender.

Exhibit J.

38. On or about June 29, 2005, Alali accepted command discipline (loss of two (2) leave days) for an incident occurring on April 14, 2005, in which Alali left his assigned sector and parked his police car illegally in front of a Dunkin Donuts shop, even though Alali was not responding to an emergency call for service, thereby violating R&R Sections 1.5 and 2.3. Exhibit K.

1625489.1

39. Section 1.5 is set forth above. Section 2.3 of the Rules and Regulations provides:

> Members of the Department shall obey all laws of the United States, the State of New York and the City of New Rochelle. A violation of any law will be considered a departmental disciplinary offense as well as an illegal act subjecting the violator to criminal penalties.

Exhibit L.

40. On or about August 29, 2006, Alali declined command discipline (loss of one (1) leave day) for an incident occurring on June 15, 2006, in which Alali proceeded at high speed through a red light at a major intersection without slowing down and drove up onto a sidewalk in a busy commercial area, in responding to an incident, even though the road supervisor had advised that the situation was under control and that anyone not already on the scene should disregard the call and resume patrol. Exhibit M.

41. As of August 29, 2006, when he declined to accept command discipline in connection with the June 15, 2006 incident, Officer Alali understood that, as a consequence of declining command discipline, the NRPD would prefer formal disciplinary charges against him. Exhibit M.

42. Within a few days after August 29, 2006, the assistance of outside counsel was sought to prepare disciplinary charges against Alali. *See* Gazzola Aff't, at ¶25. A copy of the charges and specifications against Alali is annexed as Exhibit N.

### Performance Evaluations

43. Alali testified at his deposition that he could not recall his performance evaluations for 2002, 2003 and 2004, except that they were not below standard. Alali Dep. at 70:14-71:3.

44. As noted above, Alali was injured on July 28, 2003, and was not on duty for the remainder of the year 2003. Gazzola Aff't, at ¶4. He returned to duty on September 23, 2004. He was assigned to work light duty for one week and then returned to full duty on October 1, 2004. *Id.*

45. Alali was thereafter evaluated for the period November 26 to December 31, 2004. Exhibit O. He received a "meets standard" evaluation for that period. *Id. See* Gazzola Aff't, at ¶5.

46. The 2004 evaluation states that Alali needed to improve on certain areas, including: (i) advising Central when he makes a vehicle stop; and (ii) improving his demeanor and being more courteous when communicating with the public, as manifested by civilian complaints lodged against him. Exhibit O.

47. Section 3.2 of Article 2.03 of the NRPD Manual of Procedure states that "[w]henever an officer makes a vehicle stop, he will notify the police dispatcher . . . prior to exiting the police vehicle." Exhibit J.

48. On or about August 31, 2005, the NRPD assigned Alali's evaluating supervisor, Sgt. Edward Austin, to ride along with Alali to review his performance. Gazzola Aff't, at ¶6.

49. On the basis of his ride-along review, Sgt. Austin prepared a "letter of counsel," dated September 29, 2005, addressed to Alali. Exhibit P. Gazzola Aff't, at ¶7.

50. The letter of counsel praised Alali for the number of traffic summonses and parking tickets that he issued. Exhibit P. The letter also raised certain problem areas, including Alali's: (i) failure to provide headquarters with prior notification of traffic stops; (ii) failure to use "verbal judo"; (iii) failure to have certain forms on hand; (iv) relatively insubstantial enforcement of City Code violations; (v) inability to diffuse confrontations with the public when

his authority is challenged; (vi) concentration on main roads within his assigned sector, at the expense of patrolling side streets; and (vii) failure to use discretion, among others. *Id.*

51.     The letter of counsel states that Alali is "expected to be a more rounded officer addressing [] needs of the community other than just [traffic] enforcement." Exhibit P, at p.2. The letter then provides a specific list of expectations, with citations to relevant provisions of the NRPD Rules & Regulations and Manual of Procedure:

1.  Traffic stops are to follow Department Rule regarding calling out stops, use of verbal judo, and other procedures;

2.  Required equipment will be carried, for example, all necessary summonses, required uniform equipment and reports and forms needed for patrol. Ensuring vehicle is properly stocked;

3.  Patrol and be familiar with all streets of assigned areas as well as primary roads;

4.  Use discretion in dealing with the public when issuing summonses or making a[n] arrest;

5.  Maintain composure in situations where your authority is challenged or discourteous[ness] is directed at you but no other reason for action is present;

6.  Enforce violations of the City Code when appropriate;

7.  Follow search and seizure laws and Department policy regarding same;

8.  Follow proper use of 10 codes including calling out on scene and calling clear from scene; [and]

9.  Obey and comply with any lawful order given by a superior officer.

Exhibit P, at p.3 (citations omitted).

52.     On or about November 9, 2005, Captain Gazzola, Sgt. Austin and Lt. Schulman, met with Gazzola to discuss the letter of counsel. Gazzola Aff't, at ¶8.

53. In the November 9, 2005 meeting, Alali was advised that his failure to conform with the specific expectations outlined in the letter of counsel could lead to a "below standard" evaluation. Gazzola Aff't, at ¶8.

54. On or about January 27, 2006, Alali received a below-standard performance evaluation for the previous year, 2005. A copy of the performance evaluation is annexed as Exhibit Q. Gazzola Aff't, at ¶9.

55. One of the stated reasons for Alali's below-standard performance evaluation for the year 2005 was that he received more civilian complaints during 2005 than any other officer. Exhibit Q.

56. On or about June 1, 2006, Alali received an interim performance evaluation for the period January 1 through May 31, 2006, necessitated by his below-standard evaluation for the year 2005. Alali's interim 2006 evaluation was also below standard. Exhibit R. Gazzola Aff't, at ¶10.

57. The interim 2006 evaluation notes that Alali: (i) needs to improve his communication skills; (ii) had already received four civilian complaints during the 6-month rating period; (iii) needlessly escalates tensions in many traffic stops by issuing a "seemingly punitive number of summonses"; and (iv) demonstrates a lack of discretion. Exhibit R.

58. On or about February 2, 2007, Alali received his performance evaluation for the 12-month period January 1 through December 31, 2006. He was rated below standard. Exhibit S. Gazzola Aff't, at ¶11.

59. The full evaluation for 2006 again noted Alali's problem with communicating with the public on traffic stops, which led to a large number of civilian complaints. Exhibit S. It also noted his inability to stay within his assigned post, and an incident in which Alali drove

recklessly in responding to a call, even though all officers were advised that the situation was under control and to disregard the call. *Id.* The evaluation further states that "[c]ivilian complaints and department discipline were negative issues last year [2005] and there has not been a discernible improvement over this rating period." *Id.*

60. On or about June 21, 2007, Alali received an interim performance evaluation for the period January 1 through May 31, 2007, necessitated by his below-standard evaluation for the year 2006. Alali's interim 2007 evaluation was also below standard. Exhibit T. Gazzola Aff't, at ¶12.

61. By memorandum dated July 25, 2007, Gazzola amended the 2007 interim evaluation to "meets standard." Gazzola Aff't, at ¶13.

62. A copy of the July 25, 2007 memorandum is annexed as Exhibit U.

63. Alali admitted that, under Section 13.1 of the NRPD Administrative Manual, a New Rochelle police officer's performance is evaluated on the basis of both qualitative and quantitative factors. *See* Alali Dep. at 240:7-25.

64. A copy of Section 13.1 of the NRPD Administrative Manual is annexed as Exhibit V. Gazzola Aff't, at ¶33.

### The Disciplinary Charges

65. Captain Gazzola signed disciplinary charges and specifications against Alali on February 15, 2007. Exhibit N.

66. The first charge deals with an incident occurring on June 15, 2006, in which Alali is charged with reckless operation of a police vehicle. Exhibit N.

67. The conduct addressed by the first charge was captured by Alali's police vehicle's in-car digital audio and video recording system. Gazzola Aff't, at ¶26.

68. A copy of the audio and video captured from Alali's police vehicle on June 15, 2006 is annexed as Exhibit W. Gazzola Aff't, at ¶26. Throughout the incident, Alali had the volume on his AM/FM radio at a high level. *Id.*[2]

69. A copy of Article 2.11 of the NRPD Manual of Procedure is annexed as Exhibit X. Gazzola Aff't, at ¶31.

### Miscellaneous Matters

70. Alali was assigned to attend a seminar entitled Tools for Tolerance at the New York Tolerance Center held on November 30, 2005. Gazzola Aff't, at ¶14.

71. Besides Alali, eighteen (18) additional members of the New Rochelle Police Department were assigned to attend the seminar. Exhibit Y. Gazzola Aff't, at ¶15.

72. The NRPD maintains a record – known as the "Post Patrol Book" – that lists identified foot posts to which an officer may be assigned. Copies of relevant pages from the Post Patrol Book are attached as Exhibit Z. Gazzola Aff't, at ¶16.

73. Alali claimed that he was assigned to a non-standard post on Union Avenue during the midnight shift when foot posts are not assigned. Alali Dep. at 77:25-79:10.

74. Union Avenue, between 9th Street and Warren Street, lies within recognized foot patrols situated within Beat 7 and Beat 8. Gazzola Aff't, at ¶17, and Exhibit Z.

75. The Post Patrol Book, page 1, states: "Additional posts may be temporarily created as the need arises." Gazzola Aff't, at ¶18, and Exhibit Z.

76. Foot patrols may be assigned during any of the three 8-hour tours of duty maintained by the NRPD. Gazzola Aff't, at ¶19.

---

[2] The DVD (audio and video) should play on Windows Media Player.

77. Article X, Section 11 of the agreement between the City of New Rochelle and the New Rochelle Police Association contains a tuition reimbursement plan. Gazzola Aff't, at ¶¶20-21, and Exhibit AA.

78. Under the tuition reimbursement plan, officers are entitled to reimbursement for college-level course work credited towards an undergraduate or graduate degree in Criminal Justice or Public Administration. Exhibit AA, Section 11(B). Gazzola Aff't, at ¶21.

79. To be eligible for reimbursement, course work must be approved in advance by the Police Commissioner, successfully completed, and the officer must submit proof of course cost, content and grade received. Exhibit AA, Section 11(B), 11(D), and 11(E). Gazzola Aff't, at ¶22.

80. Section 11(G) of the tuition reimbursement plan states, in relevant part: the "total amount of City tuition reimbursement that may be approved for the unit membership as a whole shall not exceed $30,000 for 2005 and $40,000 per year effective 2006." Exhibit AA.

## Procedural History

81. Alali signed a Charge of Discrimination (the "EEOC Charge") addressed to the New York State Division of Human Rights and the United States Equal Employment Opportunity Commission (EEOC). A copy of the EEOC Charge is attached as Exhibit BB.

82. Captain Gazzola signed disciplinary charges against Alali on February 15, 2007, Exhibit N, although, as noted above, the process of preparing said charges had commenced months earlier.

83. Alali filed his complaint in the instant action on February 21, 2007. A copy of the complaint is attached as Exhibit CC.

84. The EEOC has not issued a right-to-sue letter in connection with the EEOC Charge signed by Alali on February 12, 2007. Declaration of Lalit K. Loomba, Esq., at ¶29.

85. Defendants filed their answer on April 13, 2007, asserting, among other affirmative defenses, the defense of qualified immunity and absolute immunity. A copy of the Defendants' answer is attached as Exhibit DD.

86. The Court entered a Discovery Plan and Scheduling Order on May 25, 2007. Exhibit EE.

Dated: White Plains, New York
       August 2, 2007

                              WILSON, ELSER, MOSKOWITZ,
                              EDELMAN & DICKER LLP
                              Attorneys for Defendants

                              By: Lalit K. Loomba (LL-9755)

3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
File No. 07367.00056