WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000
Attn:   Peter A. Meisels (PM-5018)
        Lalit K. Loomba (LL-9755)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X        07 Civ. 1296 (CLB)

ARAZ ALALI,

                          Plaintiff,

        -against-

ROBERT GAZZOLA, individually, PATRICK J.
CARROLL, individually, and the CITY OF NEW
ROCHELLE, New York,

                          Defendants.
-----------------------------------------------------------X

# DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION
## FOR SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Defendants
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000

## TABLE OF CONTENTS

Page

Introduction ................................................................................................1

Preliminary Statement ...............................................................................1

Pertinent Facts and Procedural History ....................................................2

Argument ...................................................................................................5

**POINT I**

**STATE OFFICERS WHO INITIATE DISCIPLINARY
HEARINGS ARE ENTITLED TO ABSOLUTE IMMUNITY** ......................5

**POINT II**

**GAZZOLA AND CARROLL ARE ENTITLED TO QUALIFIED
IMMUNITY FROM SUIT ON ALALI'S CLAIMS UNDER
42 U.S.C. §1981 AND SECTION 296 OF THE NEW YORK
EXECUTIVE LAW** ...............................................................................6

A.    Commissioner Carroll is Entitled to Qualified Immunity............................8

B.    Captain Gazzola is Entitled to Qualified Immunity..................................13

**POINT III**

**GAZZOLA AND CARROLL ARE ENTITLED
TO QUALIFIED IMMUNITY FROM SUIT
ON ALALI'S EQUAL PROTECTION CLAIM** ............................................18

**POINT IV**

**GAZZOLA AND CARROLL ARE ENTITLED TO BOTH
ABSOLUTE AND QUALIFIED IMMUNITY FROM SUIT
ON ALALI'S CLAIM FOR SELECTIVE PROSECUTION** .........................20

**POINT V**

**THE DEFENDANTS ARE ENTITLED TO SUMMARY
JUDGMENT ON ALALI'S TITLE VII CLAIM** ........................................22

## TABLE OF CONTENTS (cont'd)

**Page**

**POINT VI**

**THE CITY IS ENTITLED TO SUMMARY JUDGMENT
ON ALALI'S REMAINING CLAIMS** .............................................................23

**Conclusion** ..........................................................................................................24

# TABLE OF AUTHORITIES

**Cases**                                                                                                **Page**

*Alali v. DeBara,* 07 Civ. 2916 (CLB) ...........................................................................1, 22

*Alfano v. Costello,* 294 F.3d 365 (2d Cir. 2002)................................................18

*Andrews v. City of New York,* 2004 U.S. Dist. LEXIS 30290
(E.D.N.Y. Nov. 23, 2004) .........................................................................13

*Bizzarro v. Miranda,* 394 F.3d 82 (2d Cir. 2005)..............................................20

*Brown v. City of Oneonta,* 221 F.3d 329 (2d Cir. 1999).............................20, 21

*Buckley v. Fitzsimmons,* 509 U.S. 259 (1993) ......................................................6

*Caniello v. The City of New York,* 2001 U.S. Dist. LEXIS 20
(S.D.N.Y. Jan. 4, 2001)........................................................10, 11, 12, 16, 17

*Cerrone v. Brown,* 246 F.3d 194 (2d Cir. 2001).....................................................7

*Clue v. Johnson,* 179 F.3d 57 (2d Cir. 1999)......................................................23

*Contes v. Porr*, 345 F. Supp.2d 372 (S.D.N.Y. 2004) ....................................5, 23

*Cuoco v. Moritsugu*, 222 F.3d 99 (2d Cir. 2000)..................................................5

*Davis v. Lynbrook Police Dep't,* 224 F. Supp.2d 463 (E.D.N.Y. 2002)............................12

*Davis v. The County of Nassau,* 355 F. Supp.2d 668 (E.D.N.Y. 2005)..............................21

*Demoret v. Zegarelli,* 451 F.3d 140 (2d Cir. 2006) ...........................................8, 18, 19, 23

*Dobosz v. Walsh,* 892 F.2d 1135 (2d Cir. 1989)....................................................6

*Dory v. Ryan,* 25 F.3d 81 (2d Cir. 1994) ........................................................5, 6

*Gaston v. Coughlin,* 249 F.3d 156 (2d Cir. 2001) .............................................18

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993)..........................................18, 19

*Hill v. Taconic Dev. Disabilities Servs. Office,*
2003 U.S. App. LEXIS 11 (2d Cir. Jan. 2, 2003) ..........................................7, 8

## **TABLE OF AUTHORITIES (cont'd)**

**Cases**                                                                 **Page**

*Ifill v. United Parcel Service,*
2005 U.S. Dist. LEXIS 5230 (S.D.N.Y. March 29, 2005) ................................8

*Magilton v. Tocco,* 379 F. Supp.2d 495 (S.D.N.Y. 2005) ..................................5

*Malley v. Briggs,* 475 U.S. 335 (1986) ...............................................................7

*Monell v. City of New York Dep't of Social Servs.,* 436 U.S. 658 (1978) ........................23

*Munafo v. Metropolitan Transp. Auth.,* 285 F.3d 201 (2d Cir. 2002) ................................6

*Patane v. Clark,* 435 F. Supp.2d 306 (S.D.N.Y. 2006) ....................................19

*Patterson v. County of Oneida,* 375 F.3d 206 (2d Cir. 2004)......................................18, 19

*Payami v. City of New York,*
2007 U.S. Dist. LEXIS 25851 (S.D.N.Y. Mar. 28, 2007) ......................................14, 15, 19

*Peries v. New York City Board of Ed.,*
 2001 U.S. Dist. LEXIS 23393 (2001)...............................................................7

*Rush v. Artuz,* 2004 U.S. Dist LEXIS 15333 (S.D.N.Y. Aug. 6, 2004)............................12

*Saucier v. Katz,* 533 U.S. 194, 121 S. Ct. 2151 (1981) ........................................7

*Smith v. Keane,* 1998 U.S. Dist. LEXIS 3702 (S.D.N.Y. Mar. 25, 1998) ........................12

*Spear v. Town of West Hartford*, 954 F.2d 63 (2d Cir. 1992) .............................................5

*Sullivan v. Newburgh Enlarged School Dist.,*
281 F. Supp.2d 689 (S.D.N.Y. 2003)...............................................................23

*Torres v. Pisano,* 116 F.3d 625 (2d Cir. 1997)..................................................19

*United States v. Armstrong,* 517 U.S. 456 (1996) ............................................20

*Vann v. The City of New York,* 72 F.3d 1040 (2d Cir. 1995)......................................12, 16

*Verbeek v. Teller,* 158 F. Supp.2d 267 (E.D.N.Y. 2001)..................................5, 6

*Wang v. State Univ. of New York, etc.,* 470 F. Supp.2d 178 (E.D.N.Y. 2006)..........7, 8, 20

## <u>TABLE OF AUTHORITIES (cont'd)</u>

**<u>Cases</u>**                                                                                                        **<u>Page</u>**

*Washington v. Davis,* 426 U.S. 229 (1976)........................................................................21

*Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62 (2d Cir. 2000) ........................8

*Williams v. R.H. Donnelley Corp.,* 368 F.3d 123 (2d Cir. 2004)................................12, 18

*Word v. Croce,* 169 F. Supp.2d 219 (S.D.N.Y. 2001) .................................................12, 18

*Wrighten v. Glowski,* 232 F.3d 119 (2d Cir. 2000)............................................................22


***Statutes and Regulations***

42 U.S.C. §2000e *et* seq...............................................................................................1, 22

42 U.S.C. §1981...................................................................................8, 13, 14, 18, 22, 23

New York State Executive Law §296 *et seq.* .......................................................1, 8, 13, 18

1624616.1

### Introduction

Defendants Robert Gazzola ("Gazzola"), Patrick J. Carroll ("Carroll") and the City of

New Rochelle (the "City") (collectively, the "Defendants") respectfully submit this

memorandum of law in support of their motion for an Order, pursuant to Rule 56 of the Federal

Rules of Civil Procedure, dismissing the complaint with prejudice on grounds of absolute and

qualified immunity.

### Preliminary Statement

This is the first of two federal actions recently filed by plaintiff Araz Alali ("Alali")

alleging national-origin employment discrimination.  Alali, who claims to be of Iraqi national

origin, alleges in this action ("Alali I") and in the subsequent action entitled *Alali v. DeBara et*

*al.,* 07 Civ. 2916 (CLB) ("Alali II"), that he was subjected to a pattern of unlawful discrimination

by members of the New Rochelle Police Department ("NRPD" or the "Department"), including

Patrick J. Carroll, the Commissioner of Police and Robert Gazzola, a Captain in the NRPD.  In

the instant action, Alali alleges: (i) a violation of 42 U.S.C. §1981 (first claim); (ii) a violation of

the equal protection clause of the 14th Amendment (second claim); (iii) selective prosecution in

violation of the equal protection clause of the 14th Amendment (third claim); (iv) a violation of

Title VII, 42 U.S.C. §2000e *et seq.* (fourth claim); and (v) a violation of Section 296 *et seq.* of

the New York State Executive Law (fifth claim).

Commissioner Carroll and Captain Gazzola (the "Individual Defendants") are entitled to

absolute immunity and/or qualified immunity on each of these claims.  Absolute immunity

applies because the initiation of disciplinary charges, even under an alleged conspiracy to bring

false charges, is a prosecutorial function protected by absolute immunity.  Qualified immunity

applies because, with rare exception, Alali failed to allege or in his deposition establish the direct

personal involvement of Carroll or Gazzola, and where such involvement is alleged, the Individual Defendants did not violate clearly-established law. Alali's bare allegations of supervisory liability cannot defeat summary judgment. Since there are no viable claims against the Individual Defendants, the complaint should be dismissed against the City as well.

## Pertinent Facts and Procedural History

The facts and procedural history are set forth in the accompanying statement made pursuant to Local Rule 56.1, to which the Court is respectfully referred. Each paragraph in the Rule 56.1 statement is supported by evidence contained in Alali's deposition testimony, and/or the accompanying affidavits of James Fortunato, sworn to July 30, 2007 ("Fortunato Aff't") and defendant Robert Gazzola, sworn to July 27, 2007 ("Gazzola Aff't"). All exhibits referenced herein are annexed to the accompanying declaration of Lalit K. Loomba, Esq., dated August 2, 2007.

In summary, Alali's tenure with the NRPD has been marked by an overwhelming number of civilian complaints and internal command disciplines. Alali joined the NRPD effective February 10, 2002. Rule 56.1 Statement, at ¶5. On July 28, 2003, Alali suffered an injury and did not return to active duty until October 1, 2004. *Id.* at ¶12. Between February 10, 2002 and July 28, 2003, Alali amassed six civilian complaints. *Id.* at ¶¶6-11. Many of these alleged that Alali was rude and discourteous during traffic stops, and as a result, Alali was sent for training in Verbal Judo, a tactical communications program designed to de-escalate tensions that may arise in police-citizen encounters. *Id.* at ¶¶6-11, 28-29.

Alali received command discipline (a letter of reprimand) for an incident occurring on August 1, 2002, that was also the subject of a civilian complaint. Rule 56.1 Statement, at ¶¶7, 30. He received command discipline (a letter of reprimand) for an incident occurring on October

-2-

29, 2002, in which he was charged with leaving his assigned post. *Id.* at ¶¶32-33. He also received command discipline for an incident occurring on December 23, 2002, in which Alali failed to respond to a supervisor who tried to reach him over the police radio. *Id.* at ¶¶34-35.

On July 28, 2003, Alali was injured and was not on duty for over a year. Rule 56.1 Statement, at ¶12. He resumed light duty on September 23, 2004 and returned to active duty on October 1, 2004. *Id.*

Between October 1, 2004 and the end of the year, two more civilian complaints were brought against Alali, both for being rude and discourteous. Rule 56.1 Statement, at ¶¶13-14. Alali received a job performance evaluation for the period November 26 to December 31, 2004. *Id.* at ¶45. The evaluation was "meets standard," but stated that Alali had failed to notify headquarters upon making traffic stops, and needed to work on his demeanor when interacting with the public. *Id.* at ¶¶45-46. Section 3.2 of Article 2.03 of the NRPD Manual of Procedure states that "[w]henever an officer makes a vehicle stop, he will notify the police dispatcher . . . prior to exiting the police vehicle." *Id.* at ¶47. Section 3.5 of Article 2.03 of the NRPD Manual of Procedures states, concerning traffic stops, that "[a]n officer will be courteous and professional in his conversation with the violator." *Id.* at ¶37.

Between January 1 and December 31, 2005, five additional civilian complaints were brought against Alali. Rule 56.1 Statement, at ¶¶15-19. Alali received command discipline for an incident occurring on January 19, 2005 for being rude and discourteous to a motorist. *Id.* at ¶36. He also received command discipline for an incident occurring on April 14, 2005 where Alali parked his police car illegally in front of a donut shop. *Id.* at ¶38.

On or about August 31, 2005, a supervisor was assigned to ride along with Alali to observe his performance and provide additional training. Rule 56.1 Statement, at ¶48. The

-3-

supervisor wrote a detailed "letter of counsel," listing specific areas where Alali needed to conform his performance to the Department's rules and procedures. *Id.* at ¶¶49-51. Captain Gazzola thereafter met with Alali and the supervisor to discuss the "letter of counsel." *Id.* at ¶52. Alali was told that if he did not improve his performance he could receive a "below standard" job evaluation. *Id.* at ¶53. Alali's job performance evaluation for the period January 1 to December 31, 2005 was, in fact, "below standard." *Id.* at ¶54. The evaluation noted that Alali had received more civilian complaints during the evaluation period than any other officer. *Id.* at ¶55.

During the period January 1 through May 31, 2006, four additional civilian complaints were brought against Alali. Rule 56.1 Statement, at ¶¶20-23. Alali received an interim performance evaluation for the same 6-month period. The evaluation was "below standard." *Id.* at ¶56. The interim evaluation noted that Alali had already received four civilian complaints, and that Alali needed to improve his communication skills and use more discretion when dealing with the public. *Id.* at ¶57.

During the period June 1 through December 31, 2006, three additional civilian complaints were brought against Alali. Rule 56.1 Statement, at ¶24-26. In addition, Alali was presented with command discipline for an incident occurring on June 15, 2006, in which while responding to a call for officer assistance, Alali drove through a red light without slowing down, and then drove his police vehicle onto a busy commercial-district sidewalk, even though the call had been rescinded and those not already present were ordered to disregard the call and resume patrol. *Id.* at ¶40. On August 29, 2006, Alali declined to accept the proffered command discipline of a loss of one leave day for this incident. *Id.* at ¶41.

-4-

Shortly after August 29, 2006, the Department sought the assistance of outside counsel to prepare formal disciplinary charges against Alali. Rule 56.1 Statement, at ¶42. The charges were signed on February 15, 2007. *Id.* at ¶82. Alali filed the instant action on February 21, 2007. *Id.* at ¶83.

## Argument

### POINT I

### STATE OFFICERS WHO INITIATE DISCIPLINARY HEARINGS ARE ENTITLED TO ABSOLUTE IMMUNITY

Absolute immunity[1] protects municipal officials from personal liability for the initiation of administrative proceedings. *Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992). The discretion which such officials properly exercise with respect to administrative proceedings would be impaired if their immunity from damages was less than complete. *Id.* Consequently, a municipal official is entitled to absolute immunity for his decision to initiate disciplinary proceedings against an employee. *Magilton v. Tocco*, 379 F. Supp.2d 495, 503 (S.D.N.Y. 2005). No action for damages lies predicated on the preferment of disciplinary charges, even if the official acted with a base motive that would otherwise subject him to suit. *Id.* (citing *Contes v. Porr*, 345 F. Supp.2d 372, 379 (S.D.N.Y. 2004)). In addition, absolute immunity applies where, as here, the plaintiff alleges a conspiracy to fabricate false disciplinary charges. *Verbeek v. Teller,* 158 F. Supp.2d 267, 281 (E.D.N.Y. 2001) (citing *Dory v. Ryan,* 25 F.3d 81, 83 (2d Cir. 1994)).

In the instant case, the complaint alleges that, having been specifically notified of Alali's filing charges with the EEOC, Captain Gazzola and Commissioner Carroll agreed to retaliate

---

[1] Although the Court's Discovery Plan and Scheduling Order (¶3d) contemplates a motion for qualified immunity, absolute immunity should also be considered at the earliest possible stages of the case. *See Cuoco v. Moritsugu*, 222 F.3d 99, 105-106 (2d Cir. 2000).

against Alali by serving him with "a series of frivolous disciplinary charges." Complaint (Ex.

CC), at ¶13. The decision to initiate disciplinary charges, however, even if allegedly made

pursuant to a conspiracy to bring false charges, is protected by absolute immunity. *Dory,* 25

F.3d at 83; *Verbeek,* 158 F. Supp.2d at 281.

The decision to initiate disciplinary charges is different than a decision to terminate

employment. While the latter is considered an employment decision, not subject to absolute

immunity, *see Dobosz v. Walsh,* 892 F.2d 1135 (2d Cir. 1989), the decision to initiate

disciplinary charges – the conduct alleged here – is considered prosecutorial in nature and hence

protected by absolute immunity. *Verbeek,* 158 F. Supp.2d at 281 (citing *Buckley v. Fitzsimmons,*

509 U.S. 259, 272-73 (1993)). Accordingly, to the extent Alali's claims are based on the

preferment of disciplinary charges, Captain Gazzola and Commissioner Carroll are protected

under the doctrine of absolute immunity.

### POINT II

**GAZZOLA AND CARROLL ARE ENTITLED
TO QUALIFIED IMMUNITY FROM SUIT ON
ALALI'S CLAIMS UNDER 42 U.S.C. §1981 AND
SECTION 296 OF THE NEW YORK EXECUTIVE LAW**

The standards applicable to a motion seeking qualified immunity from suit were set forth

recently in *Munafo v. Metropolitan Transp. Auth.,* 285 F.3d 201 (2d Cir. 2002):

> A government official sued in his individual capacity is entitled to
> qualified immunity (1) if the conduct attributed to him was not
> prohibited by federal law; or (2) where that conduct was so
> prohibited, if the plaintiff's right not to be subjected to such
> conduct by the defendant was not clearly established at the time it
> occurred; or (3) if the defendant's action was objectively legally
> reasonable[] . . . in light of the legal rules that were clearly
> established at the time it was taken.

*Id.* at 210 (internal quotes and citations omitted).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341 (1986). If a government official is not "on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier v. Katz,* 533 U.S. 194, 202, 121 S. Ct. 2151, 2156 (1981). The first step in the qualified immunity analysis is to determine whether the individual's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known." *Cerrone v. Brown,* 246 F.3d 194, 199 (2d Cir. 2001) (internal quotes omitted). If that is the case, qualified immunity is still available if it was "objectively reasonable" for the official to have believed that his actions were lawful at the time of the challenged conduct. *Id.*

Alali may argue that it is legally impossible for qualified immunity to apply in a Section 1981 case because clearly-established law has long prohibited national-origin discrimination. However, the general proposition that the law "unambiguously bars discrimination on the basis of national origin" is *not* enough to defeat qualified immunity. *Peries v. New York City Board of Ed.,* 2001 U.S. Dist. LEXIS 23393, at *23 (2001) (granting qualified immunity in a §1981 case). Rather, the analysis must be made on a more fact-specific level to determine whether law prohibiting the specific conduct alleged was "clearly established" at the relevant time. *Id.* at *24; *see, e.g., Wang v. State Univ. of New York, etc.,* 470 F. Supp.2d 178 (E.D.N.Y. 2006) (granting qualified immunity on national-origin discrimination claims).

In this regard, when evaluating a motion for qualified immunity a district court must do more than review the totality of the circumstances alleged. Rather, the court must "particularize either the claims or facts relevant to each individual defendant." *Hill v. Taconic Dev. Disabilities Servs. Office,* 2003 U.S. App. LEXIS 11, at *6 (2d Cir. Jan. 2, 2003). Because --

indeed "[p]recisely because [--] 'qualified immunity analysis depends upon an individualized determination of the misconduct alleged,' . . . courts are obliged to consider whether the facts adduced against a particular defendant could establish 'a violation of a constitutional right at all,' and if so, whether the defendant's actions were objectively reasonable in light of then clearly established law." *Id.* at *6-7 (internal cites omitted).

To assert a Section 1981 claim against an individual, the plaintiff "must demonstrate that the defendant was personally involved in the discrimination." *Ifill v. United Parcel Service,* 2005 U.S. Dist. LEXIS 5230, at *8 (S.D.N.Y. March 29, 2005) (citing *Whidbee v. Garzarelli Food Specialties, Inc.,* 223 F.3d 62, 75 (2d Cir. 2000)).  Finally, courts analyze claims under 42 U.S.C. §1981 and Section 296 *et seq.* of the New York State Executive Law using the same legal standards. *Demoret v. Zegarelli,* 451 F.3d 140, 152-53 (2d Cir. 2006); *Wang,* 470 F. Supp.2d at 183.

A.    **Commissioner Carroll is Entitled to Qualified Immunity**

Alali sets forth a series of allegedly discriminatory acts in paragraphs 8(a) through 8(j) of the complaint.  This list is preceded by the conclusory and vague allegation that such conduct took place with the "Defendants' knowledge and/or at their direction and/or with their active encouragement and condonation."  Complaint (Ex. CC), at ¶8.  However, as set forth below, a close examination of the complaint, and Alali's deposition testimony, shows that Alali fails to specifically allege Carroll's direct personal involvement, and where such involvement might be inferred, Alali has not alleged the violation of a clearly-established right.

The complaint alleges in paragraph 8(a) that Alali was subjected to discriminatory name-calling – in particular, "terrorist," "Ali Baba," "Camel Jockey," and "Ali." Ex. CC, at ¶8(a). In

his deposition, Alali further identified the name "Bin Laden." Alali Dep.[2] at 17:18-18:23.

However, Alali never testified that Commissioner Carroll ever called him one of these names. In

fact, Alali admitted that the only basis for his belief that Carroll was even *aware* of the alleged

name calling was his status as Commissioner:

> Q:    Do you believe that Commissioner Carroll was aware of the fact
>       that some city employee referred to you as a terrorist?
>
> A:    Yes.
>
> Q:    What is the basis for your belief that he was aware of that?
>
> A:    Being the police commissioner.
>
> Q:    Any other reason to believe that he knew that that happened?
>
> A:    Being the police commissioner.
>
> Q:    Aside from being the police commissioner, is there any other
>       reason?
>
> A:    That was it. Just that.

Alali Dep. at 19:2-14. Alali gave similar responses regarding the names "Alali Baba," *id.,* at

19:20-20:4, and "Camel Jockey," *id.,* at 22:6-16. Carroll's mere status as Commissioner is not

sufficient proof of his awareness of alleged name calling.

Regarding the terms "Ali" and "Bin Laden," Alali stated that he believed the

Commissioner had knowledge of these terms because the Commissioner called Alali into his

office and asked him to drop the lawsuit. Alali Dep. at 25:20-27:3; 27:22-28:16. However, just

as the Commissioner's status is not adequate proof that he was aware of the use of the terms

"terrorist" and "Alali Baba," his allegedly asking Alali to drop the lawsuit does not prove that the

Commissioner was aware of the alleged use of these other terms.

---

[2] Cited pages from Alali's deposition are annexed as Exhibit B to the Declaration of Lalit K. Loomba, Esq., dated August 2, 2007.

Alali could similarly offer no proof that the Commissioner had any involvement in the alleged decision to deny Alali specialized training, as alleged in paragraph 8(b) of the complaint. When Alali was asked to whom he directed requests for specialized training, his response was "I don't presently recall." Alali Dep. at 31:5-22.

Regarding the allegation in paragraph 8(c) of the complaint that Alali was assigned to attend the "Tools for Tolerance" seminar, the basis for Alali's belief that the Commissioner had any knowledge or involvement was: "Firstly, by being the police commissioner. Secondly, by – I expressly – I did tell Captain Gazzola that I did not want to attend the seminar. The fact that I was – all the other facts in the complaint that he was aware of." Alali Dep. at 44:17-45:3. This does not establish any specific personal knowledge or involvement on the Commissioner's part.

Regarding the allegation that he was systematically given "below-standard" job evaluations, contained in paragraphs 8(d) and 8(h) of the complaint, Alali admitted that the Commissioner was not involved. Alali Dep. at 47:5-10.

Regarding the allegation that he was assigned for months at a time as a "dispatcher," Complaint (Ex. CC), at ¶8(dd),[3] forbidden for a substantial period of time to operate a police vehicle, *id.,* at ¶8(f), and forbidden for a substantial period of time to interact with the public, *id.,* at ¶8(g), Alali testified that Commissioner Carroll told him this was because the Department was investigating a civilian complaint. Alali Dep. at 61:16-62:15; 89:9-90:5. There is no clearly-established law that prohibits assigning an officer to a "desk job" because the officer is the subject of an internal affairs investigation. *See Caniello v. The City of New York,* 2001 U.S. Dist. LEXIS 20, at *2-3 (S.D.N.Y. Jan. 4, 2001) ("by assigning [plaintiff] to desk duty with the same

---

[3] The complaint contains two sub-paragraphs denominated "8(d)." The second is hereinafter referred to as paragraph "8(dd)."

rank and base pay pending the resolution of the charges against him . . . the defendants did not deprive him of a constitutionally protected property interest.").

Regarding the allegation that he was assigned to work "walking posts," contained in paragraph 8(e) of the complaint, Alali admitted that the Commissioner had no knowledge or involvement. Instead, Alali was assigned to the walking post by tour supervisors. Alali Dep. at 79:2-7. Moreover, Alali incorrectly presumed in his deposition that he was assigned to a non-standard walking post on Union Avenue. In fact, Union Avenue is part of established walking posts published in the NRPD Post Patrol Book. *See* Rule 56.1 Statement, at ¶¶72-74. Moreover, the NRPD Post Patrol Book allows for temporary posts to be created on any tour of duty as the need arises. *Id.* at ¶¶75-76.

In paragraph 8(i) of the complaint, Alali claims that he was knowingly subjected to unnecessary internal investigations for unfounded charges. The only allegedly "false" investigation that Alali claimed involved the Commissioner was an investigation prompted by a civilian complaint brought by a Federal Express delivery driver named Edwin Veras. Alali Dep. at 96:10-97:5. In connection with the Veras investigation, Alali testified, in conclusory fashion, that the Commissioner "knew that there was absolutely no violation of the law on [Alali's] part." *Id.* at 96:10-25. However, Alali provided no evidentiary basis for his belief that the Commissioner knew the Veras complaint to be unfounded.

Alali cannot dispute that Mr. Veras brought two civilian complaints against him in August and September 2006. *See* Rule 56.1 Statement, at ¶¶25-26. In fact, Mr. Veras was no stranger to Alali, who admitted that he had a prior dispute with Mr. Veras involving the delivery of a package to Alali's home, before the incidents leading to the civilian complaints. Alali Dep. at 65:21-66:17. Again, there is no clearly-established law that 42 U.S.C. §1981 is violated when

-11-

a police officer is investigated in response to a civilian complaint. *See Caniello, supra.* Indeed, given the extensive number of prior civilian complaints and command disciplines against Alali, more troubling would be if the NRPD ignored Mr. Veras's complaints. *See Vann v. The City of New York,* 72 F.3d 1040, 1050-51 (2d Cir. 1995) (failure to investigate civilian complaints could lead to a finding of deliberate indifference); *Davis v. Lynbrook Police Dep't,* 224 F. Supp.2d 463, 479-80 (E.D.N.Y. 2002) (same).

Finally, regarding the allegation in paragraph 8(j) of the complaint that Alali was assigned to issue parking tickets on one particular street in order to humiliate and degrade him, Alali testified that he discussed the assignment with the Commissioner, but he never stated specifically that it was the Commissioner who ordered him to undertake the assignment. Alali Dep. at 131:12-132:6. Even if the Commissioner had ordered him to undertake the assignment, Alali admitted that eliminating double parking on North Avenue, what he claims he was assigned to do, would serve a valid goal of reducing traffic congestion on that street. *Id.* 131:2-11. There is no clearly-established law that assigning a police officer to a post with an admittedly legitimate police goal violates any federal rights. Moreover, Alali's personal perception that the assignment was degrading or humiliating is not controlling. *See Williams v. R.H. Donnelley Corp.,* 368 F.3d 123, 128 (2d Cir. 2004).

Alali may argue that direct involvement is not always necessary to establish the personal involvement of a supervisory official. However, conclusory allegations of supervisory liability are insufficient to defeat a motion for summary judgment. *See Rush v. Artuz,* 2004 U.S. Dist LEXIS 15333, at *38-41 (S.D.N.Y. Aug. 6, 2004); *Word v. Croce,* 169 F. Supp.2d 219, 227-28 (S.D.N.Y. 2001); *Smith v. Keane,* 1998 U.S. Dist. LEXIS 3702, at *19-21 (S.D.N.Y. Mar. 25, 1998). Here, the only specification of Alali's supervisor liability claim is the bare assertion in

-12-

the complaint that the alleged discriminatory conduct in paragraphs 8(a) through 8(j) took place with "Defendants' knowledge and/or at their direction and/or with their active encouragement and condonation." Complaint (Ex. CC), at ¶8. This bare conclusory allegation is not sufficient to defeat summary judgment.

For the reasons set forth above, Commissioner Carroll is entitled to qualified immunity on the first claim for a violation of 42 U.S.C. §1981, as well as the fifth claim for a violation of Section 296 *et seq.* of the New York State Executive Law.

## B.    Captain Gazzola is Entitled to Qualified Immunity

Captain Gazzola is similarly entitled to qualified immunity because Alali largely fails to allege or provide evidence of Gazzola's personal involvement, and where he does, there is no clearly-established law that the conduct in question violates any federal rights.

Regarding the allegation of discriminatory name calling, Complaint (Ex. CC), at ¶8(a), Alali testified that Gazzola called him "terrorist." But Alali could not recall *when* Gazzola allegedly uttered this name, and he testified that nothing, other than discussions with his attorney, could refresh his recollection. Alali Dep. at 13:14-15:15. Under the three-year limitations period for Section 1981 claims, only acts of discrimination occurring after February 21, 2004 would be actionable. *See Andrews v. City of New York,* 2004 U.S. Dist. LEXIS 30290, at *25-26 (E.D.N.Y. Nov. 23, 2004). Since Alali cannot prove that Gazzola's alleged utterance of the word "terrorist" occurred after February 21, 2003, he cannot allege a violation of a federal right. Similarly, Alali could not recall if Gazzola called him "Alali Baba," "Camel Jockey," "Ali" or "Bin Laden," or when anyone else may have called him such names Alali Dep. at 15:16-16:23; 17:4-11; 18:3-14.

WPDOCS01 1625539v.1

When asked for the basis of his belief that Gazzola was even aware of any of the alleged discriminatory name calling, he referred only to Gazzola's status as a Captain in the Department, and then, in a display of circular reasoning, referenced the alleged discriminatory conduct alleged throughout the complaint. Alali Dep. at 20:5-22:5. Gazzola's status as Captain, and generalized allegations of discriminatory conduct listed in the complaint, are insufficient to establish Gazzola's awareness of discriminatory name calling.

Moreover, there is no clearly established law that calling someone a "terrorist," "bin Laden" or similar names violates 42 U.S.C. §1981. *See Payami v. City of New York,* 2007 U.S. Dist. LEXIS 25851 (S.D.N.Y. Mar. 28, 2007). In *Payami,* the court granted summary judgment on a §1981 claim brought by a police officer of Iranian descent who was compared by his fellow officers with a 9/11 "terrorist"; called "bin Laden," and an "informer for al Queda"; and derided for taking his "camel" to work. *Id.* at *19-20. These are the same names and terms alleged by Alali.

Regarding the allegation that Alali was denied specialized training, complaint at ¶8(b), Alali could offer no proof that Captain Gazzola had any involvement. When he was asked to whom he directed requests for specialized training, his response was "I don't presently recall." Alali Dep. at 31:5-22.

Regarding the allegation that Alali was forced to attend a seminar concerning "Tools for Tolerance," complaint, at ¶8(c), Alali testified that he told Gazzola that he did not want to attend the seminar. Alali Dep. at 42:16-43:8. However, Alali was not the only officer required to attend. In fact, 18 officers, in addition to Alali, were ordered to attend. *See* Rule 56.1 Statement, at ¶71. Moreover, Alali testified that the basis for his belief that his required attendance at the seminar was designed to humiliate and degrade him was the alleged discriminatory name calling.

Alali Dep. at 42:16-43:5. But Alali testified that he could not recall whether he had been called any discriminatory names *before* he was assigned to attend the seminar. *Id.* at 45:23-46:13. Moreover, even if he had, Alali would be hard pressed to cite any case law clearly establishing that ordering a police officer, along with 18 of his fellow officers, to attend a post-911 seminar dealing with issues of tolerance violates federal law.

Regarding paragraphs 8(d) and 8(h) of the complaint, which allege that Alali was given calculatedly false "below standard" job performance evaluations, Alali testified that Captain Gazzola was involved. Alali Dep. at 47:2-10. However, Alali's conclusory allegation that the below-standard evaluations were un-warranted cannot be credited. Over and again, Alali testified that the job performance evaluations should not have been "below standard" because he consistently issued more traffic and parking tickets than anyone else in the department. *Id.* at 47:14-48:19; 49:20-52:22. However, it is undisputed, even by Alali, that under the NRPD performance evaluation system, an "employee is rated on the basis of his *qualitative* and quantitative performance." *Id.* at 240:7-25 (emphasis added).

Section 13.1 of the NRPD Administrative Manual lists various qualitative factors to be considered when rating a non-supervisory sworn employee. These include: "Attitude, Initiative, Job Knowledge, Judgment, Written Reports, Dependability, Sensitivity, Demeanor, Appearance, Oral Communication, Adaptability [and] Problem Solving." Ex. V. Alali's claim that his negative job evaluations were "calculated" is belied by the obvious problems in Alali's interaction with the public, a problem reflected by the overwhelming number of civilian complaints, and command disciplines, brought against him. *See* Rule 56.1 Statement, at ¶¶5-42. *See Payami,* 2007 U.S. Dist LEXIS 25851, at *14-15 (noting plaintiff's "history of poor performance").

Regarding the allegation that Alali received a lengthy assignment as a dispatcher, Complaint (Ex. CC), at ¶8(dd), and that during this assignment he was forbidden to operate a police vehicle, *id.,* at ¶8(f), and interact with the public, *id.,* at ¶8(g), Alali testifed that both the Commissioner and Captain Gazzola told him the reason for the assignment was a pending civilian complaint and an internal investigation. Alali Dep. at 89:9-90:14. There is no clearly-established law that prohibits assigning an officer to desk duty because of an internal affairs investigation. *See Caniello, supra.*

Regarding the allegation that Alali was assigned to a walking post during the midnight to 8:00 a.m. tour, Complaint (Ex. CC), at ¶8(e), Alali admitted that Captain Gazzola had no knowledge or involvement with such alleged assignments; Alali was assigned to the post by tour supervisors. Alali Dep. at 79:2-7. Moreover, as noted above, Alali incorrectly assumed during his deposition testimony that the assigned post was not an established walking post. Rule 56.1 Statement, at ¶¶73-74.

Regarding the allegation in paragraph 8(i) of the complaint that Alali was subjected to ungrounded "investigations," Alali testified that he was investigated by Captain Gazzola for straying from his assigned post on North Avenue. Alali Dep. at 103:21-104:12. But Alali's conclusory and facially absurd allegation that this investigation was ungrounded should not be credited. In fact, Section 1.5 of the NRPD Rules & Regulations clearly states, "Members of the Department assigned to motorized patrol, foot patrol, or a fixed post will not leave their designated area of patrol for any reason other than police necessity, personal necessity or meal period." Rule 56.1 Statement, at ¶33. Alali's complaint and deposition testimony are devoid of any specific facts to support his conclusion that an investigation into a violation of this clear rule was ungrounded.

-16-

Similarly, Alali claims he was "written up" for not using an in-car camera, even after he notified Captain Gazzola that the camera frequently "logged off." Alali Dep. at 104:13-105:18. Article 2.11 of the NRPD Manual of Procedure requires an officer riding in a vehicle equipped with an in-car camera to log onto the system at the beginning of each tour and to not erase or alter the tapes. Ex. X. The primary purpose of Article 2.11 is to require that the in-car camera is logged on at the beginning of the tour and stays on during the entire tour. *Id.* Alali's complaint and deposition testimony provide no specific facts as to why an investigation into an alleged violation of this clear rule of procedure would be ungrounded.

Moreover, there is no clearly-established law that investigating a police officer for an alleged violation of a specific rule of police procedure violates federal employment discrimination laws. *See Caniello, supra.* A police officer's alleged membership in a protected class should neither insulate him from investigation nor give him license to violate Departmental rules with impunity.

Finally, regarding the allegation that Alali was assigned to issue parking tickets on one particular street to humiliate and degrade him, Complaint (Ex. CC), at ¶8(j), Alali did not testify that Captain Gazzola forced him to take this assignment. The only allegation regarding Gazzola is that he required Alali to ride in a car equipped with a camera, something that made Alali "very uncomfortable." Alali Dep. at 129:12-24. However, the Manual of Procedure, Article 2.11, clearly provides for in-car cameras. Ex. X. It does not violate clearly-established law to require an officer to ride in a camera-equipped car, where such is expressly provided for in the Department's rules and procedures. Moreover, Alali admitted that eliminating double parking on North Avenue, what he was assigned to do, would serve a valid goal of reducing traffic congestion on that street. *Id.* at 131:2-11. There is no clearly-established law that assigning a

-17-

police officer to a post with an admittedly legitimate police goal violates any federal rights. As noted above, an employee's personal perception that a particular job is degrading or humiliating is not sufficient to establish a discrimination claim. *See Williams,* 368 F.3d at 128.

Any claim of supervisory liability regarding Captain Gazzola fails for the same reasons set forth above with respect to Commissioner Carroll. Bare, conclusory allegations of supervisory liability are not sufficient to defeat summary judgment. *E.g., Word,* 169 F. Supp.2d at 227-28.

For the reasons stated above, Captain Gazzola is entitled to qualified immunity on the first claim for a violation of 42 U.S.C. §1981, as well as the fifth claim for a violation of Section 296 *et seq.* of the New York State Executive Law.

**POINT III**

**GAZZOLA AND CARROLL ARE ENTITLED
TO QUALIFIED IMMUNITY FROM SUIT
ON ALALI'S EQUAL PROTECTION CLAIM**

To prevail on his Fourteenth Amendment equal protection claim, Alali must establish either (1) that he was subjected to a hostile work environment, or (2) he was specifically subjected to disparate treatment on the basis of his alleged national origin. *Demoret v. Zegarelli,* 451 F.3d 140, 149-151 (2d Cir. 2006). In addition, as with any claim brought under 42 U.S.C. §1983, Alali must prove each individual defendant's personal involvement in the alleged wrong. *See Gaston v. Coughlin,* 249 F.3d 156, 164 (2d Cir. 2001).

To establish a hostile work environment claim, Alali must show that "'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Demoret,* 451 F.3d at 149 (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)). In this regard, "[i]solated incidents typically do not rise to the level of a hostile work

-18-

environment unless they are 'of sufficient severity' to 'alter the terms and conditions of

employment as to create such an environment.'" *Id.* (quoting *Patterson v. County of Oneida,*

375 F.3d 206, 227 (2d Cir. 2004)). Such "'incidents must be more than episodic; they must be

sufficiently continuous and concerted in order to be deemed pervasive.'" *Id.* (quoting *Alfano v.*

*Costello,* 294 F.3d 365, 374 (2d Cir. 2002)). In *Harris,* the Supreme Court identified a list of

factors that a court could consider in determining whether a workplace is permeated with

discrimination: "These factors include: (1) the frequency and severity of the conduct; (2)

whether the conduct was physically threatening, humiliating or merely an offensive utterance;

(3) whether it unreasonably interferes with the employee's job performance; and (4) the effect on

the employee's psychological well-being." *Patane v. Clark,* 435 F. Supp.2d 306, 315 (S.D.N.Y.

2006) (citing *Harris,* 510 U.S. at 23).

Here, Alali's complaint and deposition testimony fail to allege facts sufficient to make

out a hostile work environment claim. First, as demonstrated above in POINT II, Alali has failed

to submit proof of direct personal involvement on the part of Commissioner Carroll or Captain

Gazzola, and Alali's bare allegations of supervisory liability are not sufficient to defeat summary

judgment. Second, neither Alali's complaint nor his deposition testimony establishes persistent

or repeated conduct necessary to make out a hostile work environment claim. *Torres v. Pisano,*

116 F.3d 625, 630-31 (2d Cir. 1997). A few isolated incidents or the utterance of a comment that

"engenders offensive feelings in an employee" is not sufficient to plead a hostile work

environment claim. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993). Here, Alali's complaint

alleges that he was "repeatedly" called allegedly discriminatory names, but in his deposition

Alali could not recall when or detail how often such names were used. Alali Dep. at 13:14-30:8.

Alali has failed to make out a hostile work environment claim. *See Payami, supra,* at *17-24.

Nor can Alali make out a disparate treatment claim under the 14th Amendment. To establish such a claim Alali must show that he was treated differently compared with others similarly situated, and that such "selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Bizzarro v. Miranda,* 394 F.3d 82, 86 (2d Cir. 2005).

Here, Alali cannot show that he was treated differently from others similarly situated as a *result* of national-origin discrimination, or any other impermissible consideration. Starting with his first year of employment, civilian complaints have been brought against Alali with overwhelming frequency. *See* Rule 56.1 Statement at ¶¶6-29. The number of civilian complaints was mentioned in Alali's below-standard job performance evaluations. *See* Ex.Q and Ex. S. Where, as here, there are non-discriminatory reasons for alleged discriminatory conduct, "mere allegations are not enough [to establish] an inference of discrimination." *Wang,* 470 F. Supp.2d at 184.

Therefore, Commissioner Carroll and Captain Gazzola are entitled to qualified immunity on the Alali's second claim (equal protection).

**POINT IV**

**GAZZOLA AND CARROLL ARE ENTITLED TO BOTH
ABSOLUTE AND QUALIFIED IMMUNITY FROM SUIT
ON ALALI'S CLAIM FOR SELECTIVE PROSECUTION**

To prevail on a selective prosecution theory under the Equal Protection Clause of the 14th Amendment on the basis of race or national origin (the third claim), Alali "must show that similarly situated individuals of a different race [or national origin] were not prosecuted." *United States v. Armstrong,* 517 U.S. 456, 465 (1996). Moreover, "[t]he Equal Protection Clause . . . has long been interpreted to extend to governmental action that has a disparate impact on a minority group only when that action was undertaken with discriminatory intent." *Brown v. City*

-20-

*of Oneonta,* 221 F.3d 329, 338 (2d Cir. 1999) (citing *Washington v. Davis,* 426 U.S. 229, 239-41 (1976)). "Without additional evidence of discriminatory animus, the disparate impact of an investigation such as the one in this case is insufficient to sustain an equal protection claim." *Id.*

Here, Alali alleges in paragraph 13 of the complaint that Commissioner Carroll and Captain Gazzola agreed to retaliate against Alali by serving him with "a series of frivolous disciplinary charges." Complaint (Ex. CC), at ¶13. This claim fails for two main reasons.

First, to the extent that Alali's selective prosecution claim is premised on the bringing of disciplinary charges, both Commissioner Carroll and Captain Gazzola are entitled to absolute immunity from the claim. *See supra* POINT I. Commencing disciplinary charges is a prosecutorial function, protected by absolute immunity, not an act of employee supervision, such as hiring or firing. *Id.*

Second, Carroll and Gazzola are entitled to qualified immunity on the claim because Alali has failed to testify as to necessary discriminatory intent. As noted above in POINT II, Alali does not claim that Commissioner Carroll called Alali any allegedly discriminatory names, and the only basis for Alali's belief that Carroll was aware of such conduct was his mere status as the Commissioner. Similarly, Alali could only testify that Captain Gazzola uttered the word "terrorist," but he could not recall when that occurred. "In the equal protection context, a complaint that merely alleges that the plaintiff was 'singled out,' without additional allegations of fact must be dismissed." *Davis v. The County of Nassau,* 355 F. Supp.2d 668, 679 (E.D.N.Y. 2005). Here, the only allegations that support an inference of discrimination is the alleged name calling referenced in paragraph 8(a) of the complaint and in Alali's deposition. There are no allegations or evidence to tie such name calling to Captain Gazzola or Commissioner Carroll.

-21-

Moreover, Carroll and Gazzola certainly had reasonable grounds to believe that there was a justified basis for the bringing disciplinary charges against Alali. A DVD video taken from Alali's police vehicle clearly shows that Alali drove recklessly, sped through a red light without slowing down and drove up onto a sidewalk. Ex. W. And the audio portion of the DVD demonstrates that such reckless driving occurred after dispatch advised that the situation was under control. On the basis of this plain evidence, it was reasonable for Carroll and Gazzola to believe that they did not violate any of Alali's federal rights in bringing disciplinary charges and thus they are entitled to qualified immunity.

For the reasons set forth above, Carroll and Gazzola are entitled to absolute and qualified immunity on the claim for selective prosecution.

### POINT V

### THE DEFENDANTS ARE ENTITLED
### TO SUMMARY JUDGMENT ON
### ALALI'S TITLE VII CLAIM

"[I]ndividuals are not subject to liability under Title VII." *Wrighten v. Glowski,* 232 F.3d 119, 120 (2d Cir. 2000). Therefore the complaint does not set forth a violation of Title VII as against Carroll or Gazzola.

Regarding the City, this Court has already held that Alali's failure to obtain a "Notice of Right to Sue" letter "presents an infirmity [to Alali's Title VII claim] which if not corrected promptly could result in the dismissal of Alali I" – *i.e.,* the instant case. Memorandum and Order in *Alali v. DeBara,* 07 Civ. 2916 (CLB), dated July 19, 2007, at p.4. To date, on information and belief, Alali has not received a right to sue letter from the EEOC. Rule 56.1 Statement, at ¶84.

Therefore, Defendants are entitled to summary judgment dismissing the fourth claim for relief under 42 U.S.C. §2000e et seq.

## POINT VI

### THE CITY IS ENTITLED TO
### SUMMARY JUDGMENT ON
### ALALI'S REMAINING CLAIMS

To establish liability against the City on his claims brought pursuant to 42 U.S.C. §1981

and 1983, Alali must establish that his injuries were directly caused by a municipal policy,

custom or practice. *Monell v. City of New York Dep't of Social Servs.,* 436 U.S. 658 (1978);

*Sullivan v. Newburgh Enlarged School Dist.,* 281 F. Supp.2d 689, 708 (S.D.N.Y. 2003) (Section

1981 claim must be brought under framework of 42 U.S.C. §1983). A municipality cannot be

liable under 42 U.S.C. §1981 or 1983 under the theory of *respondeat superior*. *Sullivan,* 218 F.

Supp.2d at 708. Here, Alali has not alleged nor did he testify in his deposition as to any City

policy, custom or practice that would create the basis for municipal liability under Section 1983.

Alali will probably cite *Clue v. Johnson,* 179 F.3d 57, 62 (2d Cir. 1999), and argue that a

policy for *Monell* purposes is created when an official with final authority over significant

matters – *i.e.,* a policymaker – acts. This argument would fail. First, Alali has not alleged or

introduced evidence to show that Carroll or Gazzola are persons entitled to make employment

policy for the City of New Rochelle. Second, even assuming Carroll and Gazzola are

policymakers, the only specific action allegedly taken by the Individual Defendants is the

claimed conspiracy to bring disciplinary charges. As noted above in POINT I, the Individual

Defendants are entitled to absolute immunity for such conduct. Where, as here, the Individual

Defendants are absolutely immune, immunized conduct cannot be the predicate to hold their

municipal employer liable. *Contes v. Porr*, 345 F. Supp.2d 372, 379 (S.D.N.Y. 2004).

Where, as here, defendants are entitled to summary judgment dismissing Alali's claim

under 42 U.S.C. §1981, any claim brought under Section 296 of the N.Y. State Executive Law

should also be dismissed. *See Demoret,* 451 F.3d at 152-53.

-23-

Accordingly, the City of New Rochelle is entitled to summary judgment on all claims raised in Alali's complaint.

## Conclusion

For the reasons set forth above, Commissioner Carroll and Captain Gazzola are entitled to absolute and qualified immunity from suit, and should be granted summary judgment dismissing the complaint with prejudice.  As the Individual Defendants are immune from suit in this action, summary judgment should be granted dismissing all claims against the City as well.


Dated:  White Plains, New York
       August 2, 2007


                     Respectfully submitted,

                     WILSON, ELSER, MOSKOWITZ,
                     EDELMAN & DICKER LLP
                     Attorneys for Defendants

                     Lalit K. Loomba (LL-9755)

                     3 Gannett Drive
                     White Plains, NY  10604
                     (914) 323-7000
                     Our file No.  07367.00056